IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

*leave granted*
*6/5/2008*
*Ricardo M. Urbina*

Copies to: Judge
AUSA – Special Proceedings
Dft.

UNITED STATES OF AMERICA,
                            Plaintiff,

-vs-                                    Criminal Action No. 89-0036- *Rmu*

RICHARD SMITH,
                            Defendant,

**FILED**

**JUN 0 5 2008**

Clerk, U.S. District and
~~Bankruptcy~~ Courts

MOTION FOR MODIFICATION OF SENTENCE
PURSUANT TO TITLE 18 U.S.C. §3582(c)(2)

COMES NOW, Richard Smith, Defendant Pro Se, and respectfully moves this Honorable Court to vacate his current sentence, and resentence him consistent with United States Sentencing Guidelines Amendment 505, 706 and 711, which went into effect November 1,1994, and became retroactive on November 1,1995. Also, Amendments 706 and 711, which went into effect November 1,2007, and became retroactive on March 3,2008.

## RELEVANT FACTS

The defendant was convicted on October 18,1989, before this court on the following counts; count (1) one, Conspiracy to distribute and to possess with intent to distribute cocaine and cocaine base, in violation of 21 U.S.C. §§846 and 841(a); count (3) three, Conspiracy to carry and use firearms during and in relation to a drug trafficking offense, in violation of 18 U.S.C. §924(c); count (4) four, Use of Juveniles in drug trafficking, in violation of 21 U.S.C. §845; count (20) twenty, Distribution and Possession with intent to distribute 50 grams or more of a mixture containing cocaine base, in violation of 21 U.S.C. §§841(a) and 841(b)(1)(A) and Title 18 U.S.C. §2; count (22) twenty two, felon-in-possession of a firearm by convicted felon, in violation of 18 U.S.C. §922(g); count (23) twenty three, violating Title 26 U.S.C. §5861(d) and Title 18 U.S.C. §2, which also carries a total...

sentence of life imprisonment plus (30) years, ten (10) years Supervised release, and a special assessment of $350.00.

The offenses the defendant was convicted of are as follows; count one: conspiracy to distribute and to possess with intent to distribute cocaine and cocaine base, in violation of 21 U.S.C. §§846, and 841(a)(received life imprisonment); count three: conspiracy to carry and use firearms during and in relation to a drug trafficking offense, in violation of 18 U.S.C. §§371, and 924(c)(received 5 years); count four: Use of juveniles in drug trafficking, in violation of 21 U.S.C. §845(b)(received life imprisonment); count twenty: Distribution and possession with intent to distribute 50 grams or more of a mixture containing cocaine base, in violation of 21 U.S.C. §§841(a), and 841(b)(1)(A)(iii)(received life imprisonment); count twenty one: unlawful use of firearm in aid of drug trafficking, in violation of 18 U.S.C. §924(c)(received thirty years); count twenty two:possession of a firearm by a felon, in violation of 18 U.S.C. §922(g)(received ten years); count twenty three: unlawful possession of a unregistered firearm, in violation of 26 U.S.C. §5861(d)(received ten years)(counts 3, 4, 20, 22, and 23 are to be served concurrently with sentence imposed on count 1. Count 21 is to be served consecutively to sentence imposed on count 1. for a total sentence confinement of life imprisonment plus thirty years.

A. Modification of Sentence

Section 3582 of Title 18 of the United States Code (1994), allows for a reduction of Defendant's sentence if the length thereof has been subsequently reduced by the United States Sentencing Commission (hereinafter Commission"). On November 1,1994, the Commission, through Amendment 505, reduced the

maximum offense level for conspiracy to distrubute more than five hundred (500) kilograms of cocaine from base level of 40 to 38. The Commission made the change retroactive on November 1,1995. The Court, after considering the purposes of sentencing set forth in section 3553(a), has the discretion to apply the amendment retroactively in a particular case. In exercising its discretion, the Court must consider several factors. These factors are as follows:

> (a) The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider the following factors;
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed;
>
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant;...
>
> (3) the kind of sentence available;
>
> (4) the kinds of sentence and the sentencing range established for...
>
> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines...
>
> ....
>
> (5) any pertinent policy statement...
>
> ......
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct...

18 U.S.C. §3553(a)(emphasis added).

Taking these factors into account, a reduction in the defendant's sentence is clearly warranted.

Moreover, the nature and circumstances of the offense as described by the district court that sentenced the defendant, show that a reduction here would be appropriate.

Next, in terms of the need for the sentence imposed, the ends outlined in §3553(a)(2) would all be adequately served by a reduction in the defendant's sentence. Reducing his sentence to the proper Post Amendment 505 range would still reflect the seriousness of and provide just punishment for the offense, create a sufficient deterrence effect, and adequately protect the public.

Pursuant to the then applicable United States Sentencing Guidelines (USSG), the Presentence Report (PSR) reached a base offense level of **36** due to a drug quantity greater than 500 grams of "crack" cocaine, which would be a drug quantity greater than 1,500 kilograms equivalent to powder cocaine and imposed an adjustments for his supervisory role in the conspiracy pursuant to U.S.S.G. §3B1.1(b). An adjusted offense level of **39** combined with defendant's criminal history category V. yielded a guideline range which mandated a sentence of life imprisonment.

The court adopted the recommendation of the Presentencing Report (PSR) and sentenced the defendant to a life sentence on the conspiracy count pertaining to the drug quantity. This court found that since the defendant distributed more than 500 grams of crack cocaine in the conspiracy and where this court found said amount attributable to the defendant, when the court sentenced the defendant, the 1987 Sentencing Guidelines were in effect. According to the 1987 Guidelines, the base offense level of defendant's offense was a level **39** and he had a criminal

(4)

category of V., which made his sentencing guideline range of 30 years to life imprisonment. The defendant was sentenced to a life sentence on the conspiracy charge. After the 1994 Amendment, which became retroactive in 1995, the same quantity of cocaine results in a base level offense of 38., with his criminal history category remaining V., his post-amendment range would be 360 to life imprisonment, but, adding Amendment 706 and 711, which went into effect March 3,2008, his post-amendment range would be 292 to 365 months imprisonment.

As a result of the current amendment reducing the "upper limit" of the Base Offense Level to 38, and where amendment 706 and 711 lowers defendant's offense level two more levels, and where the Sentencing Commission making the foregoing Amendments retroactive, your defendant must be resentenced under Offense Level 36, category 5, which provides for a sentence of 292 to 365 months imprisonment.

It is defendant's understanding that he need not be "physically present" at resentencing proceedings, however, he would like this court to take into consideration the advisory of United States v. Booker,543 U.S. 220 (2005);Kimbrough v. United States,128 U.S. 558 (2007); and Gall v. United States,No.06-77949 (2007) while considering a just sentence. Further, the defendant would like to bring to the court's attention, that any new sentencing order must be sent to the Federal Bureau Of Prisons in Washington, D.C., to enable the Bureau to compute the new sentence and correct the records.

§3582(c)(2) of Title 18 of the United States Code allows for a reduction of defendants sentence if the length therefore been subsequently reduced by the United States Sentencing

Commission. On November 1,1994 and November 1,2007, which became
retroactive through Amendments 505 and 711 on November 1,1995
and March 3,2008. Through Amendments 505, 706 and 711 listed
under §1B1.10, reduced the base offense level for the drug
quantity table of §2D1.1(c), and a two-level reduction for all
defendants convicted of a cocaine base ("crack") offense. The
Commission made the changes retroactive on amendment 505 on
November 1,1995, and on amendment 706 on March 3,2008.

   A defendant may move for a reduction of his sentence when
a subsequent amendment to the Sentencing Guidelines lowers his
relevant sentencing range "pursuant to 28 U.S.C. §994(o)," 18
U.S.C. §3582(c)(2), as Amendments 505, 706 and 711 lowered the
defendant's range here. §3582(c)(2) provides that the court may
then "reduce the term of imprisonment, after considering the
factors set forth in §3553(a) to the extent that they are
applicable if such a reduction is consistent with applicable
policy statements issued by the Sentencing Commission." 18 U.S.C.
§3582(c)(2).

   One such applicable policy statement is U.S.S.G. §1B1.10,
which provides that a §3582(c)(2) reduction in a defendants term
of imprisonment is authorized if "the guidelines range applicable
to that defendant has subsequently been lowered as a result of
an amendment to the Guidelines Manual listed in subsection (c)."

   As described above, if this court were to reduce the term
of the defendant's imprisonment to the commensurate sentence
in the lower sentencing range that now applies under Amendments
505, 706 and 711, the result would be 292-365 months, as opposed
to the life sentence which he is now serving. The district court
stated that it only imposed the life sentence it did because

it believed it was compelled by law to do so. Now that the law permits a different conclusion, this court should take the opportunity to reduce his sentence.

Following the enactment of Amendments 505, 706 and 711 but before the defendant filed his §3582(c)(2) motion, the Supreme Court issued its opinion in United States v. Booker, 543 U.S. 220 (2005) which severed and excised the statutory provision that had made the Sentencing Guidelines mandatory. See, e.g., id. at 245 ("So modified, the Federal Sentencing Act...makes the guidelines effectively advisory.") Thus, although courts are still to consider the guidelines ranges, courts are permitted to "tailor the sentence in light of other statutory concerns as well." id. at 245-46.

The defendant also expressly reserve the right to raise the issue of Booker, Kimbrough, and Gall on the calculation of his new sentence, in the event that the district court chose to grant his motion.

The court could and should consider for the purpose of sentencing, Section 3553(a). The court has the discretion to apply the amendment retroactively in a particular case as this, and the court must consider the factors set forth in §3553(a).

Sentencing Guideline §1B1.10 states that the "court should consider the sentence it would have imposed had the Amendments to the guidelines been in effect at the time of sentencing.

In the instant case, where the defendant was sentenced under category V., and base offense level 39, eliminating previous Base Offense Level 39, and lowering it to a 38 under Amendment 505, and where a two-level reduction pursuant to Amendment 706 and 711, which would put him at a base offense level of 36, a

two-level reduction would put him at category V., and a base
offense level of 36, which will reduce his sentence in the range
of 292-365 months. While recognizing that the court can impose
a sentence the court deems reasonable within the defendant's
base offense level, the defendant prays that the court will have
mercy upon him and impose a sentence at or near the bottom of
the guidelines.

The Supreme Court in <u>Kimbrough</u> have stated, that crack
and powder cocaine have the same physiological and psychotropic
effects, but are handled very differently for sentencing purposes.
The relevant statutes and guidelines employ a 100-to-1 ratio
that yields sentences for crack offenses three to six times longer
than those for offenses involving equal amounts of powder. Thus,
a major supplier of powder may receive a shorter sentence than
a low-level dealer who buys powder and converts it to crack
cocaine. This disparity means that a major supplier of powder
cocaine may receive a shorter sentence than a low-level dealer
who buys powder from the supplier  but then converts it to crack
cocaine.

The cracl/powder disparity originated in the Anti-Drug
Abuse Act of 1986 (1986 Act), 100 Atat. 3207. The 1986 Act created
a two-tiered scheme of five and ten-year mandatory minimum
sentences for drug manufacturing and distribution offenses.
Congress sought "to link the ten-year mandatory minimum
trafficking prison term to major drug dealers and to link the
five-year minimum term to serious traffickings." 1995 Report
119. The 1986 Act uses the weight of the drugs involved in the
offense as the sole proxy to identify "major" and "serious"
dealers. For example, any defendant responsible for 100 grams
of herion is subject to the five-year mandatory minimum, see,

21 U.S.C. §841(b)(1)(B)(i) (2000 ed. and Supp V), and any
defendant responsible for 1,000 grams of heroin is subject to
the ten-year mandatory minimum, See, §841(b)(1)(A)(i).

Crack cocaine was a relatively new drug when the 1986 Act
was signed into law, but it was already a matter of great public
concern: Drug abuse in general, and crack cocaine in particular,
had become in public opinion and in members' minds a problem
of overwhelming dimensions." 1995 Report 121. Congress apparently
believed that crack was significantly more dangerous than powder
cocaine in that: (1) crack was highly addictive; (2) crack users
and dealers were more likely to be violent than users and dealers
of other drugs; (3) crack was more harmful to users than powder,
particularly for children who had been exposed by their mother's
drug use during pregnancy; (4) crack use was especially prevalent
among teenagers; and (5) crack's potency and low cost were making
it increasingly popular. See, 2002 Report 90.

Based on these assumptions, the 1986 Act adopted a "100-
to-1 ratio" that treated every gram of crack cocaine as the
equivalent of 100 grams of powder cocaine. The Act's five-year
mandatory minimum applies to any defendant accountable for 5
grams of crack or 500 grams of powder. See, §841(b)(1)(ii), (iii).

While Congress was considering adoption of the 1986 Act,
the Sentencing Commission was engaged in formulating the
Sentencing Guidelines. In the main, the Commission developed
Guidelines Sentences using an empirical approach based on data
about past sentencing practices, including 10,000 presentence
investigation reports. See, U.S.S.G. §1A.1, intro. comment.,
pt. A, ¶3. The Commission "modif[ied] and adjust[ed] past practice
in the interest of greater rationality, avoiding inconsistency,
complying with congressional instructions, and the like." See,

Rita v. United States, 551 U.S. ___, ___ (2007)(slip op., at 10).

The Commission did not use this empiracal approach in developing the Guidelines sentences for drug-trafficking offenses. Instead, it employed the 1986 Act's weight-driven scheme. The Guidelines use a drug quantity table based on drug type and weight to set base offense levels for drug trafficking offenses. See, U.S.S.G. §2D1.1(c). In setting offense levels for crack and powder cocaine, the Commission, in line with the 1986 Act, adopted the 100-to-1 ratio. The statute itself specifies only two quantities of each drug, but the Guidelines "go further and set sentences for full range of possible drug quantities using the same 100-to-1 ratio." 1995 Report 1. The Guidelines' drug quantity table sets base offense levels ranging from 12, for offenses involving less than 250 milligrams of crack (or 25 grams of powder), to 38, for offenses involving more than 1.5 kilograms of crack (or 150 kilograms of powder). U.S.S.G. §2D1.1(c).

Although the Commission immediately used the 100-to-1 ratio to define base offense levels for all crack and powder offenses, it later determined that the crack/powder sentencing disparity is generally unwarranted. Based on additional research and experience with the 100-to-1 ratio, the Commission concluded that the disparity "fails to meet the sentencing objectives set forth by Congress in both the Sentencing Reform Act and the 1986 Act." 2002 Report 91.

Finally, the Commission stated that the crack/powder sentencing differential "fosters disrespect for and lack of confidence in the criminal justice system" because of a "widely-held perception" that it "promotes unwarranted disparity based on race." 2002 Report 103.

)

Further, The original purpose behind the requirement that sentence reductions be consistent with Commission policy statements was to override the court's more general authority to depart from the guidelines under §3553(b). See, **Hutchingson** Sent'g Law & Pract. §1B1.10, n.2 (2007). Given that §3553(b) was excised because it made the guidelines mandatory in all cases except those involving a circumstance of a kind or to a degree not adequately taken into consideration by the Commission, **Booker,542 U.S. at 234-35, 245-46, 259**, it is unlikely that §3582(c)(2) could be interpreted to require even stricter limitations on judicial discretion after Booker.

The court in <u>Hicks</u>,472 F.3d at 1171 stated, while §3582 (c)(2) proceedings do not constitute full resentencings, their purpose is to give defendants a new sentence. This resentencing, while limited in certain respects, still results in the judge calculating a new guideline range, considering the §3553(a) factors, and issuing a new sentence based on the Guidelines. The dichotomy drawn by the government, where full re-sentencings are performed under an advisory system while "reduction proceedings," or "modifications," rely on a mandatory guideline system, is false...Booker excised the statutes that made the guidelines mandatory and rejected the argument that the guidelines might remain mandatory in some cases but not in others.

Regardless of whether §3582(c)(2) re-sentencings constitute full de novo sentencings, they clearly require the court to impose a sentence based upon its evaluation of the §3553(a) factors, a process that cannot be circumscribed by a policy statement. The issue is analogous to pre-Booker cases in which courts held that once the

authority to reduce a sentence under §3582(c)(2) is triggered
by retroactive guideline, the sentencing court must consider
all relevant statutory sentencing criteria currently in
existence, even if such criteria did not exist at the time
of the original sentencing and is otherwise unrelated to
the triggering amendment.

Applying Booker is in accord with the requirement that courts
apply the current version of the Sentencing Guidelines in effect on
the date of resentencing. It is well settled that absent an ex post
facto problem, the district court must apply the version of the
sentencing guidelines in effect on the date of the defendant's
resentencing. See, **United States v. Mateo-Espejo,** 426 F.3d 508, 510,
N.1 (1st Cir.2005)(citing United States v. Harotunian, 920 F.2d 1040,
1041-42 (1st Cir.1990)). This echoes the policy statement in the
Guidelines Manual, that "[t]he court shall use the Guidelines Manual
in effect on the date that the defendant is sentenced, unless doing
so would violate the ex post facto clause." U.S.S.G. 1B1.11(a) and
(b)(2).

Here, in the instant case, Bookers advisory regime will be the
"version of the Sentencing Guidelines in effect" on the date of the
defendant's resentencing. These Guidelines will necessarily include
judicial interpretations by the Supreme Court, of the "constitutional
requirement that creates fundamental change to the legal framework in
question; a requirement of such magnitude that it rendered the
Guidelines advisory only. See, **Booker,** 543 U.S. at 248, 125 S.Ct. 738
(2005). Therefore, an imposition of a Guidelines sentence here
without applying their newly advisory role would be violative of the
established principle that the Guidelines as they exist at the time
of resentencing is the version to be applied.

A. Booker applies to §3582(c)(2) resentencing.

The Supreme Court in Booker explicitly stated that "as by now should be clear, a mandatory system is no longer an open choice. See, Booker,543 U.S. at 263, 125 S.Ct. 738. Moreover, Booker emphasized that the Sentencing Guidelines could not be construed as mandatory in one context and advisory in another.

The Court believed that Congress would not have authorized a mandatory system in some cases and non-mandatory system in others, given the complexities that such a system would create Id. at 266, 125 S.Ct. 738. Indeed, district courts are now endowed with the discretion to obviate Application Note 2. of Section 1B1.10(b) of the Guidelines which states that:

> [i]n determining the amended guideline range under subsection (b), the court shall substitute only the amendments listed in subsection (c) for the corresponding guideline provisions that were applied when the defendant was sentenced. All other guideline application decisions remain unaffected. (emphasis added).

Therefore, since Booker excised the statutes that made the Guidelines mandatory and mandatory guidelines no longer exist, this court is free to resentence the defendant accordingly See, e.g., United States v. Hicks,472 F.3d 1167, 1171-72 (9th Cir.2007)("Booker...provides a constitutional standard which courts may not ignore... [T]o the extent that the policy statements are inconsistent with Booker, the policy statements must give way"). Cf. Cirilo Munoz v. United States,404 F.3d 527, 533, n.7 (1st Cir.2005)(noting that several courts of appeals have said that the advisory guidelines regime is to be used after Booker in resentencing even when the remand for resentencing are not caused by Booker error).

The defendant is mindful that Booker does not mean that judges are now free to impose any sentence that they want and that, while Booker has increased a sentencing court's discretion, that discretion is not without limits. Therefore, at the defendant's resentencing hearing, the defendant would ask this court to begin by calculating the applicable guideline range. Once that is established, the defendant would request that this court would evaluate the factors set forth in §3553(a) to determine whether or not a guideline or non-guideline sentence is warranted.

## CONCLUSION

WHEREFORE, for the reasons stated above, the defendant prays that this Honorable Court would grant his Motion For Modification Of Sentence under §3582(c)(2) and §1B1.10.

Respectfully Submitted,

_____
**Mr. Richard Smith**
Reg.No.13733-016
FCC-USP Coleman-1
P.O. Box 1033
Coleman, Florida. 33521

[Defendant Pro Se]

Dated: April ___,2008

## CERTIFICATE OF SERVICE

I, Richard Smith, hereby certify, under the penalty of perjury, that a copy of the foregoing entitled Motion For Modification Of Sentence was mailed via the U.S. Mail, postage pre-paid and properly addressed to:

AUSA: Patricia A. Heffernan
Office of the United States Attorney
555 Fourth Street, N.W.,
Washington, D.C. 20530


Respectfully Submitted,

_____
Mr. Richard Smith
Reg.No.13733-016
FCC-USP Coleman-1
P.O. Box 1033
Coleman, Florida. 33521

[Defendant Pro Se]