UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.         )<br>)<br>RICHARD SMITH,             )<br>  Defendant.              ) | Criminal No. 89-36 (RMU) |

**UNITED STATES' OPPOSITION TO DEFENDANT'S SECOND MOTION
PURSUANT TO 18 USC § 3582(c) TO REDUCE SENTENCE**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully files its Opposition to defendant's Second Motion to Pursuant to 18 USC § 3582(c) to Reduce Sentence. For the reasons set forth below, the Court summarily deny this motion.

**BACKGROUND**

In 1989, defendant and others were indicted for numerous violations of certain federal narcotics and weapons laws and an armed assault offense under the D.C. Code. According to the D.C. Circuit:

> The evidence introduced by the government showed that Michael Palmer, Lamar Harris, Richard Smith, Gary Wyche, and Donald Johnson were participants in a large-scale drug distribution business. . . . Michael Palmer presided over an organization that imported large amounts of cocaine from New York City and distributed the cocaine in northeast Washington, D.C. The other defendants played various supporting roles in the organization. Their conduct gave rise to convictions under 21 U.S.C. § 861 (formerly section 845b) on charges of drug distribution and of using juveniles (persons under the age of 18) for drug distribution. The kingpin, Palmer, was also convicted of running a Continuing Criminal Enterprise (CCE) under 21 U.S.C. § 848 because of the size and scope of the drug distribution operation, which involved many "runners," couriers, lookouts, and other helpers.
>
> The government secured additional convictions grounded in the defendants' use of weapons. Although most of these counts were based on the usual pattern of employing firearms to intimidate the competition and to protect the operation

against the police, some counts were based on the defendants' arrangement to swap drugs for guns. An acquaintance of theirs had provided weapons in exchange for drugs on a number of occasions. He subsequently became a government informant, and the next time the defendants asked him to provide guns for drugs, he set up the transaction monitored by federal agents. When Smith and Harris tendered drugs to the informant, he passed to them a gym bag containing ten guns, including a MAC-10, a favorite of drug dealers. The agents pounced as Harris and Smith were leaving the parking lot where the exchange was consummated, carrying the gym bag with them. Smith was arrested immediately, and the bag with the guns was recovered, while Harris was arrested somewhat later. This transaction led to charges based on possession and use of firearms "during and in relation" to a drug distribution offense under 18 U.S.C. § 924(c) and on possession of an automatic weapon without a permit under 26 U.S.C. § 5861(d).

In addition to several counts of drug distribution and several counts of use of firearms in relation to drug distribution offenses, the defendants were convicted of a conspiracy to distribute drugs and of a conspiracy to use firearms during and in relation to their drug trafficking offenses under 21 U.S.C. § 846 and 18 U.S.C. § 371, respectively. The multiple substantive counts on both the drug and gun offenses served as predicate acts for the conspiracies.

The government also introduced evidence of acts of armed violence by which the defendants attempted to protect their "turf" against competitors. Among other acts of violence, they assaulted Anthony Chung, one of their sellers who failed to pay for cocaine that he was given to sell, and held him for several days in an abandoned apartment. These acts did not lead to convictions but were taken into account by the district court at sentencing in the calculation of the offense levels.

United States v. Harris, 959 F.2d 246, 249 (D.C. Cir. 1992).

On July 17, 1989, a jury found defendant guilty of: conspiracy to distribute and possess with intent to distribute cocaine and cocaine base (Count 1); conspiracy to use firearms in relation to drug trafficking crimes (Count 3); use of juveniles to distribute cocaine and cocaine base (Count 4); distribution of 50 grams or more of cocaine base (Count 20); carrying a firearm (machine gun) in relation to a drug trafficking offense (Count 21); possession of a firearm while a convicted felon (Count 22); and receipt and possession of an unregistered machine gun (Count 23).

The Honorable Harold H. Greene, who presided over the trial, sentenced the defendant on October 18, 1989. Defendant's base offense level was 36; 3 points were added to this score, resulting in a total offense level of 39 because, according to Judge Greene, "[t]here is substantial evidence that Mr. Smith was a manager in the Palmer organization." 10/18/89 Tr. at 3. Defendant's criminal history score was V, resulting in a guideline range of 360 months to life.

Before imposing sentence, the Court discussed the conspiracy in general, and defendant's specific role in it:

> Mr. Smith was an integral part of the Palmer organization since his release from jail in June or July of 1988 until January of 1989. The evidence so shows; and as I interpret the jury verdict, it supports that kind of decision.
>
> Mr. Smith together with Harris and Wyche were Palmer's principal lieutenants. I don't know exactly how much crack was distributed during the period that Mr. Smith was a participant, but we have heard about 4 kilos a month, which is so much more for the period in which he was a participant than the 500 grams which are required for the highest level under the offense computation required by the guidelines. So I find that he did distribute more than 500 grams of crack during the period when he was a member.
>
> Since he was not part of the conspiracy until released from jail, the total quantities do not add up to as much as with some of the others, but Mr. Smith certainly made up for it in violence and in the weapons violations. He was one of those who terrorized the neighborhoods.... He participated in the kidnaping and restraint of Anthony Chung. He participated in the shootout in Kentland. When he was arrested, there was a machine gun and three other guns to be traded for drugs.
>
> His criminality is in character. Mr. Smith has six prior convictions, including one where he was sentenced to three to nine years, and for which he is still on parole, where the facts indicate that he pointed a gun at one officer's chest and another gun at another officer's - or the same gun - at another officer's face, but both of them misfired and neither of the officers was injured or killed. We also have no acceptance of responsibility whatever from Mr. Smith.

10/18/89 Tr. 2-3.

The Court then sentenced the defendant on Counts 1, 4, and 20 to concurrent terms of life imprisonment; a concurrent 5 year term on Count 3; concurrent 10 year terms on Counts 22 and 23; and 30 years, to be served consecutively to all other sentences, on Count 21.  10/18/89 Tr. 4.  In sum, Judge Greene sentenced the defendant to life imprisonment, plus 30 years.  Id.

As defendant notes in his motion, his convictions on Counts 21 and 23 have been vacated.  As a result, before the retroactive changes to the crack cocaine guidelines took effect on March 3, 2008, defendant was serving a sentence of life imprisonment.

On June 5, 2008, defendant filed a pro se Motion to Reduce sentence pursuant to 18 U.S.C. § 3582 and the retroactive changes to the crack cocaine guidelines.  Under the revised guidelines, defendant's amended total offense level was 37.  That score, combined with his criminal history score of V, resulted in an amended range of 324 to 405 months (down from 360 months to life).  On September 18, 2008, the Court granted defendant's motion in part, reducing his sentence to 405 months' imprisonment.

## DEFENDANT'S SECOND MOTION TO REDUCE SENTENCE

Although he acknowledges he already has received a sentence reduction pursuant to 18 U.S.C. § 3582 and the retroactive crack cocaine guidelines, defendant now requests a further reduction.  Specifically, he seeks a sentence of 325 months' imprisonment, which is the bottom of his amended guideline range.  To support this request, defendant points to the sentence reduction that one of his codefendants - Lamar Harris - recently received and asserts that there is a unwarranted disparity between his sentence and that of Harris.  We disagree.

## **ARGUMENT**

Defendant's assertion that the Court should further reduce his sentence so that it is equal to that of Lamar Harris is without merit.  Unlike Harris's case, here, the Court already has considered the merits of defendant's claim for a reduced sentence and has imposed the sentence that the Court found just and appropriate.  That sentence was 405 months.

Moreover, the situation presented by Harris's case is not analogous to defendant's case for at least two reasons.  First, in our view, Harris's motion to reduce his sentence, as supplemented by the Federal Public Defender, presented a litigation risk not present here, thus resulting in our agreement to a sentence in the middle of Harris's amended guidelines range.  When he initially was sentenced in this case, Harris's base offense level was 38; this was increased by 3 based on his role as a manager or supervisor and by an additional 2 for his role in holding Anthony Chung captive.  However, unlike defendant, Harris had accepted responsibility after the trial, which resulted in a 2 level reduction.  Hence, Harris's total offense level was 41.  His criminal history score was, at II, much lower than the defendant's score of V.  Based on Harris' offense level of 41 and criminal history score of II, his guidelines range was 365 months to life.  Judge Greene, as he did with the defendant, sentenced Harris to the top of the guidelines range.  In all, Harris received a sentence of life imprisonment, plus 55 years.  Over time, several of Harris's convictions were vacated, thereby reducing his sentence.  At the time he filed his <u>pro se</u> motion to reduce sentence, Harris was serving a sentence of life imprisonment.  FPD later filed a supplement to Harris's motion.  In that motion, FPD asserted that Harris's amended range was 235 to 293 months and requested that the Court impose a sentence of time served.  By our calculation, however, Harris's amended range was higher - 292 to 365 months.  Hence, Harris's

case presented the risk that the Court would agree with FPD's lower amended guidelines range and impose a sentence within that lower range. Ultimately, we agreed with FPD that we would not oppose a sentence of 325 months. In our view, this agreement was a sound one in that it allowed us to agree to a sentence in the middle of the amended range that we believed was correct, while minimizing the risk that Harris would receive a sentence far below what we believed was appropriate. In contrast, defendant's case presents no such risk because we agree with the defendant that his amended guideline range is 325 months to 405 months' imprisonment. Moreover, defendant's amended range is higher than Harris's amended range, and he seeks a sentence at the bottom of his amended range, while Harris received a sentence in the middle of his amended range.

Second, in asserting that his sentence should be further reduced so that it equals that of Harris's sentence, defendant ignores or glosses over portions of the record justifying this Court's decision to impose the sentence that it did. While it is true that Harris was convicted of a greater number of counts than the defendant, Harris - unlike the defendant - accepted responsibility after the trial concluded. 10/18/89 Tr. 3 ("We also have no acceptance of responsibility whatever from Mr. Smith"). And although defendant asserts (at 7) that the Court did not attribute "any acts of violence at sentencing" to him, that is plainly incorrect. Indeed, while defendant quotes Judge Greene's comment at sentencing that "the total quantities [attributable to the defendant] do not add up to as much as with some of the others," 10/18/89 Tr. 2, he omits the remainder of the Court's comment: "but Mr. Smith certainly made up for it in violence and in the weapons violations." Id. Nor does defendant note Judge Greene's comment that defendant "participated in the kidnaping and restraint of Anthony Chung" and participated "in the shootout in

Kentland." Id. at 3.  Indeed, later during the sentencing, Judge Greene stated that "[t]he Court could have added two levels for the restraint of Anthony Chung, but since the probation report doesn't recommend that and it wouldn't change the result anyway, I will not do that." Id.  Defendant also ignores Judge Greene's comment that defendant was active in the conspiracy while he was on parole for an offense that involved him pointing a gun at two officers.  Id.  Indeed, the record makes clear that defendant's criminal history score of V was far more serious than Harris's score of II, thus resulting in defendant's higher amended sentencing range.

## **CONCLUSION**

For the foregoing reasons, the Court should summarily defendant's second motion to reduce his sentence.

                                            Respectfully submitted,

                                            CHANNING D. PHILLIPS
United States Attorney
D.C. Bar Number 415-793

ROBERT D. OKUN
Assistant United States Attorney
Chief, Special Proceedings Division
D.C. Bar Number 457-078

\_\_\_/s/_____
MARGARET J. CHRISS
Assistant United States Attorney
D.C. Bar Number 452-403
555 4th Street, N.W.
Washington, D.C.  20530
(202) 307-0874
Margaret.Chriss@usdoj.gov

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that, this 3rd day of February 2010, a copy of the foregoing Opposition to defendant's Second Motion to Pursuant to 18 USC § 3582(c) to Reduce Sentence was served via the ECF system upon defense counsel Jonathan Zucker, Esq.

/s/
Assistant United States Attorney