**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | * |
| | * |
| | *   **89-CR-036-03 (RMU)** |
| | * |
| **v.** | * |
| | * |
| **RICHARD SMITH,** | * |
| Defendant. | * |

**UNITED STATES' RESPONSE IN OPPOSITION TO THE**
**DEFENDANT'S MOTION FOR REDUCTION IN SENTENCE**

The United States of America, by and through its attorney, the United States Attorney for

the District of Columbia, respectfully submits its Response in Opposition to the defendant's Motion

for Reduction in Sentence. The relevant sentencing materials, including the PSR, the sentencing

transcript, and the Probation Office's sentencing Memorandum, demonstrate that the defendant

should be held accountable for a drug quantity exceeding 24 kilograms, as calculated by the Court

during the sentencing hearing.  Based on this quantity, the defendant's base offense level has

actually increased from a level 36 at the time of his original sentencing to a level 38 under the

amended guidelines.  Therefore, because the applicable base offense level has <u>increased</u>, not

decreased, the defendant is not entitled to relief under Amendment 750 of the Sentencing

Guidelines.

**BACKGROUND**

In 1989, defendant Lamar Harris and others were indicted for numerous violations of

certain federal narcotics and weapons laws and an armed assault offense under the D.C. Code.

According to the D.C. Circuit:

> The evidence introduced by the government showed that Michael Palmer, Lamar
> Harris, Richard Smith, Gary Wyche, and Donald Johnson were participants in a
> large-scale drug distribution business. . . . Their story is a tangled one, but only its

basic outline is necessary to comprehend the claims pressed on appeal. Michael Palmer presided over an organization that imported large amounts of cocaine from New York City and distributed the cocaine in northeast Washington, D.C. The other defendants played various supporting roles in the organization. Their conduct gave rise to convictions under 21 U.S.C. § 861 (formerly section 845b) on charges of drug distribution and of using juveniles (persons under the age of 18) for drug distribution. The kingpin, Palmer, was also convicted of running a Continuing Criminal Enterprise (CCE) under 21 U.S.C. § 848 because of the sizeand scope of the drug distribution operation, which involved many 'runners,' couriers, lookouts, and other helpers.

The government secured additional convictions grounded in the defendants' use of weapons. Although most of these counts were based on the usual pattern of employing firearms to intimidate the competition and to protect the operation against the police, some counts were based on the defendants' arrangement to swap drugs for guns. An acquaintance of theirs had provided weapons in exchange for drugs on a number of occasions. He subsequently became a government informant, and the next time the defendants asked him to provide guns for drugs, he set up the transaction monitored by federal agents. When Smith and Harris tendered drugs to the informant, he passed to them a gym bag containing ten guns, including a MAC-10, a favorite of drug dealers. The agents pounced as Harris and Smith were leaving the parking lot where the exchange was consummated, carrying the gym bag with them. Smith was arrested immediately, and the bag with the guns was recovered, while Harris was arrested somewhat later. This transaction led to charges based on possession and use of firearms "during and in relation" to a drug distribution offense under 18 U.S.C. § 924(c) and on possession of an automatic weapon without a permit under 26 U.S.C. § 5861(d).

The government also introduced evidence of acts of armed violence by which the defendants attempted to protect their "turf" against competitors. Among other acts of violence, they assaulted Anthony Chung, one of their sellers who failed to pay for cocaine that he was given to sell, and held him for several days in an abandoned apartment. These acts did not lead to convictions but were taken into account by the district court at sentencing in the calculation of the offense levels.

United States v. Harris, 959 F.2d 246, 249 (D.C. Cir. 1992).

## RELEVANT PROCEDURAL AND FACTUAL HISTORY

On April 27, 1989, defendants Michael Palmer, Lamar Harris, Richard Smith, Donald Johnson, Michelle Thurman, and Gary Wyche were charged in a 29-count superseding indictment with various violations of federal narcotics laws and a variety of weapons offenses. Specifically, the defendants were charged with conspiracy to distribute and to possess with intent to distribute cocaine base and cocaine powder (Count 1), in violation of 21 U.S.C. § 841(a) and 846; conspiracy to carry and use firearms during and in relation to a drug trafficking offense (Count 3), in violation of 18 U.S.C. § 371 and 924(c)(1); use of juveniles to distribute, possess with intent to distribute and to conspire to distribute and to possess with intent to distribute cocaine base and cocaine powder (Count 4), in violation of 21 U.S.C. § 845(b) and 18 U.S.C. § 2; distribution of 5 grams or more of cocaine base, and aiding and abetting (Count 5), in violation of 21 U.S.C. § 841(a) and 841(b)(1)(A)(iii) and 18 U.S.C. § 2; distribution and possession with intent to distribute 50 grams or more of a mixture containing cocaine base, and aiding and abetting (Count 20), in violation of 21 U.S.C. § 841(b)(1)(A)(iii) and 18 U.S.C. § 2.; conspiracy to use and carry firearms during and in relation to drug trafficking offenses, and aiding and abetting (Count 21), in violation of 18 U.S.C. § 924(c) and 2; and unlawful receipt and Possession of a Firearm, and aiding and abetting (Count 23), in violation of 26 U.S.C. § 5861(d) and 18 U.S.C. § 2.   In addition, each of the defendants was charged with multiple violations of 18 U.S.C. § 924(c), and certain defendants were charged with other firearms offenses. Defendants Palmer, Harris, Smith, and Wyche also were charged with two separate counts of assault with a dangerous weapon (Counts 13 and 17), in violation of D.C. Code §§ 22-502 and 105.

On July 17, 1989, a jury found defendant guilty of: conspiracy to distribute and possess

3

with intent to distribute cocaine and cocaine base (Count 1); conspiracy to use firearms in

relation to drug trafficking crimes (Count 3); use of juveniles to distribute cocaine and cocaine

base (Count 4); distribution of 50 grams or more of cocaine base (Count 20); carrying a firearm

(machine gun) in relation to a drug trafficking offense (Count 21); possession of a firearm while

a convicted felon (Count 22); and receipt and possession of an unregistered machine gun (Count

23).

Prior to the defendant's sentencing in 1989, the Probation Office submitted its PSR to the

Court and the parties. In this PSR, Probation reported that trial testimony indicated that the co-

conspirators involved in this case were selling two pounds of cocaine base every two to three days,

and that, projecting a conservative estimate from testimony at trial, the government indicated that

the group distributed in excess of 150 kilograms of cocaine base from January 1987 until July 1988.

PSR at ¶ 16.[1]  The Probation Office stated in the PSR that the guideline for 21 U.S.C. § 846 (Count

One) referred to Section 2D1.1(a)(2), which provided that an offense that resulted in serious bodily

injury and involved distribution of cocaine base in excess of 500 grams had a base offense level of

36. PSR at ¶ 33.  The Probation Office added three levels for the defendant's role in the offense as

a manager in the drug distribution organization, which was comprised of more than five participants.

---

[1]      The 1988 date appears to be a typographical error, although the same date appears
in the PSR for co-defendant Gary Wyche. See Wyche PSR, at ¶ 17.  However, the PSR for co-
defendant Lamar Harris referred to the relevant time frame as "during the period early 1987 to
January 1989." See Harris PSR, at ¶ 16; see also Government's Response to Defendant's
Sentencing Memorandum, filed September 21, 1989, at 1, ¶ 2 (noting that defendant Smith was
arrested in the ATF-sting on January 9, 1989); Judge Greene's statement at the sentencing
proceedings that "Mr. Smith was an integral part of the Palmer organization since his release from
jail in June or July of 1988 until January 1989" (Tr. 10/18/89 at 2).  The defendant does not contest
this. See Defendant's Motion to Reduce Sentence, at 1 (stating that the conspiracy was alleged to
have been in existence from on or about January 1987 through January 12, 1989).

PSR at ¶ 35, resulting in a total offense level of 39.  The Probation Office next determined that the defendant was a Criminal History V, with guideline range of 360 to life imprisonment.[2]

The defendant noted no objections to the PSR.  See Addendum to PSR.  The government objected on the grounds that enhancement papers had been filed on May 10, 1989, increasing the mandatory minimum sentence on Count One.  The Probation Office reported that the government's noted inaccuracy had been substantiated, and that the PSR had been changed to reflect the twenty year mandatory minimum on Count One.  Id.

The Honorable Harold H. Greene, who presided over the trial, sentenced the defendant on October 18, 1989.  He found that the defendant's base offense level was 36, and added three points for the defendant's role in the offense, resulting in a total offense level of 39 because, according to Judge Greene, "[t]here is substantial evidence that Mr. Smith was a manager in the Palmer organization" (Tr. 10/18/89 at 3).  He found that the defendant's criminal history score was V, resulting in a guideline range of 360 months to life.  Id. at 4.

Before imposing sentence, the Court discussed the conspiracy in general, and defendant's specific role in it:

> Mr. Smith was an integral part of the Palmer organization since his release from jail in June or July of 1988 until January of 1989.  The evidence so shows; and as I interpret the jury verdict, it supports that kind of decision.
>
> Mr. Smith together with Harris and Wyche were Palmer's principal lieutenants.  I don't know exactly how much crack was distributed during the period that Mr. Smith was a participant, but we have heard about 4 kilos a month, which is so

---

[2]     The government's copy of the PSR is illegible with respect to the criminal history information.  However, as discussed below, Judge Greene found that the defendant's criminal history score was V, resulting in a guideline range of 360 months' to life imprisonment (Tr. 10/18/89 at 3), which the defendant does not dispute.  See Defendant's Motion to Reduce Sentence Pursuant to 18 U.S.C. 3582(c)(2) at 1-2.

much more for the period in which he was a participant than the 500 grams which are required for the highest level under the offense computation required by the guidelines. So I find that he did distribute more than 500 grams of crack during the period when he was a member.

Since he was not part of the conspiracy until released from jail, the total quantities do not add up to as much as with some of the others, but Mr. Smith certainly made up for it in violence and in the weapons violations. He was one of those who terrorized the neighborhoods.... He participated in the kidnaping and restraint of Anthony Chung. He participated in the shootout in Kentland. When he was arrested, there was a machine gun and three other guns to be traded for drugs.

His criminality is in character. Mr. Smith has six prior convictions, including one where he was sentenced to three to nine years, and for which he is still on parole, where the facts indicate that he pointed a gun at one officer's chest and another gun at another officer's - or the same gun - at another officer's face, but both of them misfired and neither of the officers was injured or killed. We also have no acceptance of responsibility whatever from Mr. Smith.

(Tr. 10/18/89 at 2-3) (emphasis added).

The Court then sentenced the defendant on Counts 1, 4, and 20 to concurrent terms of life imprisonment; a concurrent 5 year term on Count 3; concurrent 10 year terms on Counts 22 and 23; and 30 years, to be served consecutively to all other sentences, on Count 21 (Tr. 10/18/89 at 4). In sum, Judge Greene sentenced the defendant to life imprisonment, plus 30 years. Id.

As the defendant notes in his motion, his § 924(c) convictions have been vacated. See Defendant's Motion to Reduce Sentence at 2 & n. 1. As a result, before the retroactive changes to the crack cocaine guidelines took effect on March 3, 2008, the defendant was serving a sentence of life imprisonment.

On June 5, 2008, the defendant filed a pro se Motion to Reduce sentence pursuant to 18 U.S.C. § 3582 and the retroactive changes to the crack cocaine guidelines. The Probation Office reported that under the revised guidelines, the defendant's amended total offense level was 37. That

score, combined with his criminal history score of V, resulted in an amended range of 324 to 405 months (down from 360 months to life).  On September 18, 2008, without a response from the government, the Court granted the defendant's motion in part, reducing his sentence to 405 months' imprisonment.

On December 23, 2009, the defendant filed a Second Motion for Retroactive Application of the Sentencing Guidelines, in which he requested a further reduction, although he acknowledged that he already had received a sentence reduction pursuant to 18 U.S.C. § 3582 and the retroactive crack cocaine guidelines.  Specifically, he sought  a sentence of 325 months' imprisonment, which was the bottom of his amended guideline range. On February 3, 2010, the United States filed its Memorandum in Opposition to the defendant's second motion for a reduction in sentence.  The defendant filed a reply on February 18, 2010.  The Court has not ruled on that motion.

On October 17, 2011, the defendant filed the instant Motion for Retroactive Application of the Sentencing Guidelines, pursuant to 18 U.S.C. § 3582 and Amendment 748, now referenced as Amendment 750, which the defendant contends has reduced the sentencing guideline range applicable to him from 324 months to 405 months (offense level 37, Criminal History Category V) to 262 to 327 months (offense level 35, Criminal History Category V), and requests a reduction in sentence to time-served.[3]

_____

[3]     The defendant cited Amendment 748, which implemented provisions of the Fair Sentencing Act ("FSA"), and noted that the Sentencing Commission voted to give retroactive effect to that Amendment effective November 1, 2011.  The FSA directed the Sentencing Commission to promulgate emergency amendments to the guidelines that would bring them into conformity with the Act's substantive provisions.  Although the result of that directive was Amendment 748, which, among other things, adjusted downward some of the base offense levels for crack cocaine, Amendment 748 was a temporary, emergency amendment.  On April 6, 2011, the Commission re-promulgated as permanent the provisions of Amendment 748 and, on April 28, 2011, submitted the amendment for congressional review. On June 30, 2011, the Commission voted to give the

On October 27, 2011, this Court ordered the Government to file an opposition or a filing indicating that there is no opposition to the defendant's motion to reduce sentence by November 1, 2011.

On November 1, 2011, the United States filed a Motion for Extension of Time to File its Response, based in part on its review of a sentencing Memorandum it had received from the Probation Office with respect to a co-defendant, which resulted in the government's identification of certain factual and legal issues with respect to drug quantity that needed to be resolved before the United States could take a final position on whether there has been a reduction of the defendant's guideline range under the most recent amendments to the Sentencing Guidelines.  In the  Probation Office's October 16, 2011 sentencing Memorandum with respect to co-defendant Lamar Harris,  the Probation Office's revised guidelines calculations reflected no change from the original guidelines calculations, and the Probation Office did not recommend a sentence reduction, upon review of the original PSR and other available court documentation, stating that "the total offense level is not subject to adjustment based upon the retroactive amendment regarding crack cocaine. While the application of the guidelines in the original report may be subject to interpretation, the total offense level remains the same based upon the established quantity of 100,000 kilograms of cocaine base." Memorandum at 2.  On November 8, 2011, this Court entered an Order directing that the United States file its response by November 15, 2011.

The Probation Office indicated in its November 10, 2011 sentencing Memorandum that the

---

amendment, which is designated as Amendment 750 in Appendix C, retroactive effect.  See United States v. Drummond, 2011 WL 2746278, *2 (D.S.C. Jul. 14, 2011), aff'd, 416 Fed. Appx. 284 (4th Cir. 2011).  Therefore, any eligibility for a sentence reduction in the defendant's sentence would be pursuant to Amendment 750, rather than Amendment 748.

defendant's Original Guidelines Calculations were a Total Offense Level 39, with an imprisonment range of 360 months' to life imprisonment, at a Criminal History Category V. The Probation Office indicated that the Revised Guidelines Calculations are a Total Offense Level 35, and an Imprisonment Range of 262 to 327 months' imprisonment, at a Criminal History Category V. <u>See</u> November 10, 2011 Memorandum, at 1. The United States submits that no reduction is warranted or authorized under the revised sentencing guidelines, because the total drug quantity distributed in the course of the defendant's involvement in the conspiracy exceeded 8.4 kilograms of cocaine base, which means that the defendant's guidelines range has not been reduced by Amendment 750.

## ARGUMENT

A defendant's sentence may be reduced pursuant to 18 U.S.C. § 3582(c)(2) *only* when the defendant was "sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission" and *only* "if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." <u>See</u> <u>also</u> U.S.S.G. § 1B1.10(a)(1) (sentence may be reduced only if "the guideline range applicable to that defendant has subsequently been lowered as a result of an amendment to the Guidelines Manual listed in subsection (c)"); U.S.S.G. § 1B1.10(a)(2)(B) (reduction in sentence is not authorized if "amendment listed in subsection (c) does not have the effect of lowering the defendant's applicable guideline range"); <u>Dillon v. United States</u>, 130 S.Ct. 2683, 2691-92 (2010).

Furthermore, the courts have consistently held that a defendant is not entitled to relief pursuant to Section 3582(c)(2), where the pertinent amendment does not result in a lower sentencing range. <u>See</u>, <u>e.g.</u>, <u>United States v. Berry</u>, 618 F.3d 13, 18 (D.C. Cir. 2010) (defendant not entitled to relief under Section 3582(c)(2) where Amendment 706 did not lower applicable guideline range

because defendant was sentenced under career offender range); <u>United States v. Tepper</u>, 616 F.3d 583, 585 (D.C. Cir. 2010) (same); <u>United States v. Cook</u>, 594 F.3d 883, 884 (D.C. Cir.), <u>cert. denied</u>, 130 S.Ct. 3375 (2010) (defendant not entitled to relief under Section 3582(c) where Amendment 706 did not lower applicable guideline range because defendant was sentenced to a mandatory minimum sentence); <u>United States v. Lindsey</u>, 556 F.3d 238, 239 (4th Cir.), <u>cert. denied</u>, 130 S.Ct. 182 (2009) (although one defendant's offense level had been reduced, he was not entitled to relief because the sentencing range had not changed); <u>United States v. McFadden</u>, 523 F.3d 839 (8th Cir. 2008) (per curiam) (same); <u>United States v. Leniear</u>, 574 F.3d 668, 673-74 (9th Cir. 2009) (defendant not entitled to relief because the sentencing range was unchanged due to the operation of the grouping rules).

There are numerous other situations in which the defendant's sentencing range is unchanged, and therefore the defendant is ineligible for a sentencing reduction, notwithstanding the amendment to the crack guideline.  They include:

<u>Quantity in excess of 8.4 kilograms</u>.  At the high end, Section 2D1.1 at one time assigned offense level 38 to any quantity of crack cocaine of 1.5 kilograms or more.  In December 2007, in Amendment 706, the Commission revised Section 2D1.1 such that level 38 applied to any quantity of 4.5 kilograms or more.  The latest amendment applies level 38 to any quantity of 8.4 kilograms or more.  Thus, in a case seeking a reduction based on the new amendment, if the court had determined that the offense involved more than 8.4 kilograms, there is no basis for a reduction of sentence, as level 38 applies under both the old and revised guidelines.

If the court previously made a finding of more than 8.4 kilograms of crack, or the court adopted findings of the PSR which included that fact, or the defendant admitted this fact in a plea

allocution, the court in the § 3582(c)(2) proceeding may rely on the higher quantity and reaffirm the application of offense level 38. All courts consistently so held in addressing motions based on the 2007 amendment, with regard to cases involving more than 4.5 kilograms (the operative quantity at the time). See, e.g., United States v. Johnson, 633 F.3d 116 (2d Cir. 2011) (per curiam); United States v. Harris, 331 Fed. Appx. 942 (3d Cir. 2009) (not precedential); United States v. Johnson, 326 Fed. Appx. 190 (4th Cir. 2009) (per curiam) (unpublished); United States v. Hernandez, 645 F.3d 709, 712(5th Cir. 2011); United States v. Watkins, 625 F.3d 277, 282 (6th Cir. 2010); United States v. Forman, 553 F.3d 585, 590 (7th Cir. 2009) (per curiam); United States v. Woodson, 280 Fed. Appx. 568 (8th Cir. 2008) (unpublished); United States v. Williams, 290 Fed. Appx. 133 (10th Cir. 2008) (unpublished); United States v. Jones, 548 F.3d 1366, 1368-69 (11th Cir. 2008); United States v. Best, 2008 WL 4551229 (N.D. Ind.2008) (citing numerous cases); United States v. Palm, 2008 WL 3091266 (N.D. Ind. 2008) (explaining that it is irrelevant that the defendant did not have reason to dispute the quantity at the time of sentencing; the fact was stated in the PSR and undisputed).

In this case, the guideline range applicable to the defendant has not been lowered. To the contrary, as discussed more fully below, the defendant's base offense level has been increased from a 36 to a 38, based on a drug quantity of 8.4 kilograms or more of cocaine base. Adding three levels for the defendant's role in the offense as a manager in the drug distribution organization, which was comprised of more than five participants, results in a total offense level of 41. Thus, given the defendant's Criminal History Category of V, his guideline range remains 360 months' to life imprisonment, as it was at the time of the original sentencing.

Apparently, in its November 10, 2011 sentencing Memorandum, the Probation Office used a drug quantity of more than 500 grams of cocaine base, for a base offense level of 32 (at least 280

grams but less than 840 grams of cocaine base), and added three levels, for a revised total offense level of 35, with a revised guideline range of 262 to 327 months' imprisonment. The defendant has made the same argument. <u>See</u> Defendant's Motion to Reduce Sentence, at 3. The United States respectfully disagrees with this analysis.

In its original Presentence Report prepared for the October 18, 1989 sentencing, the Probation Office stated that the government, projecting a conservative estimate from testimony at trial, indicated that the co-conspirators distributed in excess of 150 kilograms of cocaine base from January 1987 until July 1988 (sic), although it did not mention a specific quantity in determining that the base offense level was 36. The defendant did not challenge that calculation. Thus, over 150 kilograms of cocaine base resulted in a base offense level of 36, which applied to any quantity over 500 grams of cocaine base, which resulted in a total offense level of 39 with sentencing enhancements.

Moreover, in the transcript of the original sentencing on October 18, 1989, Judge Greene noted that defendant Smith was convicted of seven counts: two counts of conspiracy, one count of distribution of crack; one count of the use of juveniles in crack distribution, and three firearms offenses: use of a machine gun in the drug trade, possession of a firearm by a convicted felon, and possession of an unregistered firearm (Tr. 10/18/89 at 2). He found that the defendant was "an integral part of the Palmer organization since his release from jail in June or July of 1988 until January 1989. The evidence shows[,] and as I interpret the jury verdict, it supports that kind of a decision. Mr. Smith together with Harris and Wyche were Palmer's principal lieutenants" (Tr. 10/18/89 at 2).

With respect to drug quantity, Judge Greene stated:

> I don't know exactly how much crack was distributed during the period that Mr. Smith was a participant, but we have heard <u>about 4 kilos a month, which is so much more for the period in which he was a participant than the 500 grams which are required by the guidelines.</u> So I find that he did distribute more than 500 grams of crack during the period when he was a member.

(Tr. 10/18/89 at 2) (emphasis added).

Using Judge Greene's calculation of the defendant's participation in the distribution of about 4 kilograms of cocaine base a month, during the approximately six to seven months the defendant was a member of the conspiracy, the defendant was involved in the distribution of approximately twenty-four to twenty-eight kilograms of cocaine base, well beyond the applicable 8.4 kilograms of cocaine base for a base offense level of 38 under the revised guidelines.

Judge Greene also determined that the defendant was a manager under 3B1.1.(b), and added three levels for role in the offense (Tr. 10/18/89 at 3).  He noted that he could have added two levels for the restraint of Anthony Chung, but declined to do so since the PSR did not recommend it (<u>Id.</u> at 3).  Judge Greene noted that there was no acceptance of responsibility, and that the defendant's criminal history category was V (<u>Id.</u> at 3-4).  Judge Greene determined that under the guidelines, with a total offense level of 39 and a criminal history level of V, and imposed concurrent  life sentences on Counts 1, 4, and 20, a concurrent 5-year sentence on conspiracy to use firearms in drug trafficking (Count 3), 10-year concurrent sentences on each of Counts 22 and 23 concerning the defendant's possession of firearms, and a consecutive 30-year term as required by statute on the machine gun count (Count 21), for a total of life imprisonment plus thirty years (Tr. 10/18/89 at 4).

In addition, the record establishes that Judge Greene recognized that, although the drug quantity of 100 to 200 kilograms of cocaine base, or over 150 kilograms as reported in the original

PSR, could not be wholly attributed to the defendant, since he joined the conspiracy later than his co-conspirators, the defendant was a major participant in the distribution of kilogram quantities of cocaine base that significantly exceeded the 500 grams of cocaine base that were required for the highest level under the offense computation required by the guidelines to place him at a base offense level of 36 (Tr. 10/18/89 at 2).

Today, using a drug quantity of 8.4 kilograms or more of cocaine base, based on Judge Greene's attribution of 4 kilograms of cocaine base a month from June 1988 through January 1989 (approximately 24 to 28 kilograms of cocaine base, the defendant's base offense level is 38. Adding three levels for role in the offense (manager of more than five participants), the defendant's total offense level is 41, with an imprisonment range of 360 to life imprisonment given a Criminal History Category V. Thus, the defendant's guideline range has not been lowered because, as the record establishes, his participation in the drug conspiracy involved the distribution of more than 8.4 kilograms of cocaine base, for a base offense level of 38, an offense level which is even higher than the base offense level of 36 that applied at the defendant's original sentencing, which, with a three level enhancement, results in the same guideline range of 360 years' to life imprisonment.

Accordingly, because the defendant's guideline range has not been lowered as a result of

Amendment 750, the defendant's motion for reduction of sentence must be denied.

Respectfully submitted,

RONALD C. MACHEN JR.
United States Attorney
D.C. Bar Number 447-889

ROBERT D. OKUN
Chief, Special Proceedings Division
D.C. Bar Number 457-078


/S/ _____
MARY ANN SNOW
Assistant United States Attorney
D.C. Bar Number 379-757
555 4th Street, N.W., Room 10-452
Washington, D.C. 20530
202-252-7574
mary.ann.snow@usdoj.gov

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that, this 15th day of November 2011, a copy of this Response

15

was served via the District Court ECF system, upon defense counsel of record:

Jonathan Zucker, Esquire
1350 Connecticut Avenue, N.W.
Suite 202
Washington, D.C. 20036

_____/s/_____<br>
Mary Ann Snow<br>
Assistant United States Attorney